IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

AUDIENCE OF ONE PRODUCTIONS, LLC,

    *Plaintiff*,

v.     Case No. 3:16-cv-00795-HEH

IMPACT VENTURES, LLC f/k/a
TNA ENTERTAINMENT, LLC, *et al.*,

    *Defendants*.

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION FILED BY DEFENDANTS RONALD DEAN HARRIS AND AROLUXE, LLC D/B/A AROLUXE MARKETING

Plaintiff Audience of One Productions, LLC ("AO1"), by counsel, files its Opposition to the Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 16 (the "Motion"), filed by Defendants Ronald Dean Harris ("Harris") and Aroluxe, LLC, d/b/a Aroluxe Marketing ("Aroluxe," and together with Harris, the "Aroluxe Defendants"). In support of its Opposition, AO1 states as follows:

### INTRODUCTION

Plaintiff AO1 alleges, among other things, breach of contract and civil conspiracy against, *inter alia*, Defendants Impact Ventures, LLC f/k/a TNA Entertainment, LLC ("TNA"), and Dean Broadhead, TNA's CFO ("Broadhead"). TNA and Broadhead answered the Complaint on November 3, 2016. *See* ECF Nos. 10 (TNA), 12 (Broadhead). The contract at issue was for repayment of sums owed by TNA, based in Nashville, to AO1, based outside of Richmond, for production work coordinated by AO1 from its offices in Virginia and performed at an event held in North Carolina (the "Repayment Agreement"). The economic damage caused by TNA's breach of the Repayment Agreement occurred, and continues to cause harm, here in Virginia.

AO1 also alleges that TNA, Broadhead, Aroluxe, and Harris conspired to breach that contract and to interfere with AO1's collection efforts (all such collection efforts undertaken from here in Virginia), preventing the payment of money owed to AO1 and forcing the ongoing expenditure of legal fees. And, as with the breach of contract claim, the economic damage caused by that conspiracy occurred, and continues to cause harm, here in Virginia. Importantly, based on TNA's initial courtship of AO1 and Defendants' interactions with AO1 in connection with the BFG Event, and later the Repayment Agreement, the conspirators knew where AO1 was located and therefore knew precisely where the conspiracy's effects would be felt.

As is their right, Aroluxe and Harris nevertheless contest this Court's exercise of personal jurisdiction, principally on the theory that, even if they did something wrong or actionable, nothing they did took place in Virginia. In support of this theory, Aroluxe submits a declaration in support of the motion to dismiss that strongly suggests there is no professional relationship between Aroluxe and Harris. *See* ECF No. 16-2. Harris, for his part, submits an affidavit that strongly suggests there was no professional relationship between Harris and either of TNA or Aroluxe at all times relevant to the Complaint. *See* ECF No. 16-1. Read together, these statements give the distinct impression that there is neither a relationship between Aroluxe and Harris nor a relationship between the Aroluxe Defendants and the Commonwealth of Virginia. As discussed below, neither is true.

In fact, contrary to the Aroluxe Defendants' arguments and evidence, AO1 has met the requisite burden and proven a *prima facie* case of personal jurisdiction over both Aroluxe and Harris. First, because AO1 has made a threshold showing that personal jurisdiction over TNA and Broadhead is appropriate, and that the Defendants engaged in a conspiracy to harm a Virginia resident limited liability company, personal jurisdiction extends to TNA and Broadhead's alleged

co-conspirators on AO1's conspiracy claim under the conspiracy theory of personal jurisdiction. Second, turning to the traditional specific jurisdiction analysis applicable to all claims, the Aroluxe Defendants purposely availed themselves of the privilege of conducting activities in Virginia. As alleged in the Complaint, AO1's claims against the Aroluxe Defendants arise from these Virginia-related activities. And finally, exercising jurisdiction over the Aroluxe Defendants is constitutionally reasonable. For these reasons and those explained more fully below, this Court should deny the Motion and find that personal jurisdiction exists over both Harris and Aroluxe.

## LEGAL STANDARDS

The question of whether the Court may exercise personal jurisdiction over out-of-town defendants "is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Liberty Mut. Fire Ins. Co. v. Menozzi Luigi & C. S.p.A.*, 92 F. Supp. 3d 435, 439 (E.D. Va. 2015) (citing *Mylan Labs. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993)). In assessing whether a plaintiff has met that burden, the court may consider and rely on the motion papers and supporting legal memoranda, as well as the relevant allegations of the complaint. *Liberty Mut.*, 92 F. Supp. 3d at 439. "If the court proceeds in this fashion, 'the plaintiff need prove only a *prima facie* case of personal jurisdiction,' with the court drawing 'all reasonable inferences arising from the proof, and resolv[ing] all factual disputes, in the plaintiff's favor.'" *Id.* (citation omitted) (denying defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2)).

"[F]or a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." *Christian Sci. Bd. of Dirs. of the First*

*Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). "Where, as in Virginia, a forum state extends the grant of personal jurisdiction as far as the Due Process Clause allows, the statutory and constitutional inquiries merge, and the reviewing court 'has jurisdiction over a nonresident defendant if the exercise of such jurisdiction is consonant with the strictures of due process.'" *Liberty Mut.*, 92 F. Supp. 3d at 440 (quoting *Tire Eng'g v. Shandong Linglong Rubber Co.,* 682 F.3d 292, 301 (4th Cir. 2012)).

"To evaluate whether 'minimum contacts' exist such that the exercise of specific jurisdiction comports with due process, a court must consider: (1) the extent to which the defendant 'purposefully availed' itself of the privilege of conducting activities in Virginia; (2) whether the plaintiff's claims arise out of such activities; and, (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *English Boiler & Tube, Inc. v. GLEX Inc.*, No. 3:12CV88-DJN, 2012 U.S. Dist. LEXIS 81505, at *10, 2012 WL 2131895, at *3 (E.D. Va. June 12, 2012) (denying defendant's motion to dismiss for lack of personal jurisdiction).

But, "[w]hen the plaintiff claims that a civil conspiracy supports personal jurisdiction, the court employs a slightly modified analysis." *St. Paul Fire & Marine Ins. Co. v. Hoskins*, Civ. A. No. 5:10-CV-00087, 2011 U.S. Dist. LEXIS 53321, at *8, 2011 WL 1897683, at *3 (W.D. Va. May 18, 2011) (denying defendants' motion to dismiss for lack of personal jurisdiction because plaintiff had adequately shown a *prima facie* case of civil conspiracy among defendants). "Under a conspiracy theory of personal jurisdiction, 'a conspirator not present in the forum state will, nevertheless, be adjudged to have had a personal presence in the forum State by means of adequate minimum contacts of the other conspirators[.]'" *St. Paul Fire*, 2011 U.S. Dist. LEXIS 53321, at *8-9, 2011 WL 1897683, at *3 (citation omitted).

**ARGUMENT**

I.       **The Aroluxe Defendants' Statements.**

Both Harris and Aroluxe, through its founder Jason Brown ("Brown"), submit statements under penalty of perjury presenting a number of *negative* facts. Brown states, for example, that Aroluxe "does not conduct business in the Commonwealth of Virginia," "does not maintain any offices, employees or other presence in Virginia," and "does not conduct significant business transactions or engage in long-term business activities in Virginia." ECF No. 16-2, ¶¶ 3, 5, 8. Importantly, however, "it has never been that the contacts a party *does not* maintain in a forum determine whether an exercise of personal jurisdiction is appropriate, but rather the quality of the contacts that the party *does* establish." *English Boiler*, 2012 U.S. Dist. LEXIS 81505, at *20, 2012 WL 2131895, at *6.

Among his other disavowals, Brown states that Aroluxe does not currently employ[1] Harris and that it "has never authorized Defendant Ronald Dean Harris to act on its behalf." ECF No. 16-2, ¶¶ 11-12. Based on AO1's pre-suit research, however, these statements do not appear to tell the whole story. For example, on at least one occasion, Ron Harris was copied, while using an "@aroluxe.com" email address on communications regarding invoicing arising from AO1's production work on the BFG Event, non-payment for which lies at the heart of the alleged conspiracy involving the Aroluxe Defendants. *See* Declaration of Stanley A. Roberts ("Roberts Decl."), ¶ 2 (attaching email to AO1 with prior correspondence involving "don@aoluxe.com" (i.e., Don Harris) and "ron@aoluxe.com" (i.e., Ron Harris)).

---

[1] Both Brown and Harris use the term "employed," which leaves open the possibility that Harris was a consultant or independent contractor, or perhaps served in one of the myriad other roles that might still give rise to a finding of agency.

Further, for many months leading up to the filing of the Complaint, both Defendant Ron Harris and his brother Don Harris (the "Harris Brothers") were proudly displayed as members of "The Aro Team" (directly beneath a photo of declarant Jason Brown), on www.aroluxe.com, which bears the copyright of Defendant Aroluxe, LLC:



*See* Roberts Decl. ¶ 3 (attaching an archived screenshot of Aroluxe's website as of January 25, 2016, *also available at* https://web.archive.org/web/ 20160125200657/http:/www.aroluxe.com/

-6-

(last visited Dec. 7, 2016) (highlighting added)). And, while the photos changed from those above to photos of them seated, the Harris Brothers continued to appear as members of "The Aro Team" until sometime *after* the Complaint in this matter was filed. *See* Roberts Decl. ¶ 4.

If that were not enough to show a legally meaningful relationship between Defendants Aroluxe and Harris, the relationship was also widely discussed in the wrestling press and related blogs and online posts.[2] For example, a writer for "cagesideseats.com" reported as follows in an article dated April 18, 2016:

> Ron & Don Harris, twin brothers and retired wrestlers who've worked for ECW and several other companies as the Bruise Brothers and WWE as the Blu Brothers and Grimm Twins, *currently are officers of Nashville-based Aroluxe*. That marketing company likely fronted the money for both the last and next *Impact* tapings in Orlando, and it's believed they or a company they own are the third-party firm which took over production last year when TNA had issues paying their staff and crew.

*See* Roberts Decl. ¶ 4 (first emphasis added) (attaching screenshots from "SB Nation" website regarding topic of "Ron & Don Harris are reportedly TNA's investors and potential buyers," *also available at* http://www.cagesideseats.com/tna-impact/2016/4/18/11453690/ron-don-harris-are-reportedly-tnas-investors-and-potential-buyers (last visited Dec. 14, 2016)).[3]

Similarly, a representative of "PWInsider.com" reported as follows in a discussion board post on April 19, 2016:

> Since January 2016, TNA has been working with Aroluxe, a marketing and production company based in Tennessee that has taken over TNA's production as

---

[2] AO1 is, of course, mindful that one should not believe everything one reads on the Internet. That said, there was extensive online coverage of the tripartite relationship between TNA Wrestling, Aroluxe, and the Harris Brothers on what appear to be authoritative professional wrestling websites. For better or worse, without the benefit of discovery, this body of web-based literature is the best information available to AO1 at this time. Importantly, however, this literature merely corroborates representations regarding Harris's involvement with Aroluxe on Aroluxe's own website.

[3] This article reprints, with credit to "Aroluxe.com" the photos of Ron and Don Harris that appeared on Aroluxe's website on the day the Complaint was filed. *See also* Roberts Decl. ¶ 4.

> part of a deal that, according to multiple sources, sees Aroluxe handle all of the expenditures for TNA tapings and then sees TNA reimburse them for expenses as well as pay them for their services. *Aroluxe is the company that former pro wrestlers Ron and Don Harris (then known as The Bruise Brothers) have been involved with*. It provides TV Production, social media management, media buying, web management and other services to clients.

*See* Roberts Decl. ¶ 5 (emphasis added) (attaching screenshot from "Sports & Wrestling" message board discussion regarding topic of "TNA To Be Bought By the Harris Twins," *also available at* http://sportsandwrestling.mywowbb.com/view_topic.php?id=38936&forum_id=1& jump_to=581974 (last visited Dec. 14, 2016)).

By way of further example, a representative of "sescoops.com" reported as follows in an article dated June 11, 2016:

> Aroluxe Marketing, *and mainly their employees Ron & Don Harris*, have been handling TNA's production and the company has fronted money to TNA to fund their TV tapings. Aroluxe has also been assigned TNA's payroll duties, and will continue working on the production for Impact Wrestling.

*See* Roberts Decl. ¶ 6 (emphasis added) (attaching screenshots from "SE Scoops" website regarding topic of "Report: Aroluxe Marketing Now Owns "TNA," Dixie Still In Charge," *also available at* http://www.sescoops.com/report-aroluxe-marketing-now-owns-tna/ (last visited Dec. 14, 2016)).

At best, the Aroluxe declaration creates a disputed issue of fact, i.e., the precise nature of Aroluxe's relationship with Ron Harris. Accordingly, mindful that all reasonable inferences be drawn and all factual disputes be resolved in the plaintiff's favor, AO1 has made the requisite showing that Ron Harris was acting on Aroluxe's behalf as Aroluxe's agent during the period relevant to the Complaint. *See Liberty Mut.*, 92 F. Supp. at 439.

For his part, Ron Harris concurs with the statement that he was never "employed" by Aroluxe, but also goes a step further—to deny also that he was employed by TNA during the

relevant period.  *See* ECF No. 16-1, ¶¶ 2-3.  Here again, AO1's pre-suit research strongly suggests otherwise.  Ron Harris was involved with, and initiated, a number of communications with AO1 regarding AO1's production work on the BFG Event while using an "@tnawrestling.com" email address and generally holding himself out as employee of TNA.  *See, e.g.*, Roberts Decl. ¶ 7 (attaching email "Re: BFG Invoice" from rharris@tnawrestling.com to tim.morin@ao1productions.com, dated December 14, 2015).  As with the relationship between Aroluxe and Harris, there was also media coverage of the Harris Brothers involvement with TNA.  For example, TNA's President, Dixie Carter, announced in or around May 2015: "We welcome Ron & Don Harris (AKIA the 6'7" twin Harris Bros) back to TNA as they will be tag teaming to head up our production team moving forward."  *See* Roberts Decl. ¶ 8 (attaching article titled "Dixie Carter Announces Longtime TNA Employees Left the Company, Announces The Signing of the Harris Brothers," *also available at* http://www.wrestlezone.com/news/577817-dixie-carter-announces-longtime-tna-employee-has-left-the-company-announces-the-signing-of-the-harris-brothers (last visited Dec. 14, 2016)).

All told, the situation does not appear to be as cut-and-dry as Mr. Brown and Mr. Harris would have the Court believe.  To the contrary, there appears to be ample evidence already in the public domain suggesting that TNA, Aroluxe, and Ron Harris were working closely together on, among other things, the production work AO1 had been promised and TNA's accounts payable, as alleged in the Complaint.  *See* Compl. ¶¶ 80-84.  Thus, even without the benefit of discovery, there is considerable evidence supporting AO1's allegations that the Aroluxe Defendants were, by virtue of Harris's simultaneous involvement with both Aroluxe and TNA, peculiarly well-suited to disrupt and destroy AO1's business relationship with TNA.  As discussed below, this evidence is sufficient for this Court to exercise personal jurisdiction over the alleged conspirators.

**II.     The Aroluxe Defendants are Subject to the Personal Jurisdiction of this Court.**

In the Motion, the Aroluxe Defendants argue that they do not possess the contacts with Virginia necessary for specific jurisdiction. More specifically, Aroluxe states that it is organized under the laws of Tennessee, does not transact or conduct business in Virginia, and does not have any offices, employees, real estate, or other presence in Virginia. Motion at 6-7, 9. Harris contends that jurisdiction over him is improper because he is a resident of Tennessee, did not travel to Virginia at any period relevant to the Complaint, was not a party to the Repayment Agreement, and was not an employee of TNA or Aroluxe at any time relevant to the Complaint. Motion at 4-5, 8. However, as noted above, "it has never been that the contacts a party *does not* maintain in a forum determine whether an exercise of personal jurisdiction is appropriate, but rather the quality of the contacts that the party *does* establish." *English Boiler*, 2012 U.S. Dist. LEXIS 81505, at *20, 2012 WL 2131895, at *6.

Despite the Aroluxe Defendants' disavowals, they are subject to the Court's jurisdiction on AO1's Count IV, Violation of Va. Code. § 18.2-499, under the conspiracy theory of personal jurisdiction. And, as to all counts against the Aroluxe Defendants, sufficient minimum contacts exist such that the exercise of specific jurisdiction over the Aroluxe Defendants comports with due process. The Court therefore has two independently sufficient bases upon which to exercise personal jurisdiction over the Aroluxe Defendants.

> A.  *The Aroluxe Defendants are Subject to th*e *Court's Jurisdiction under the Conspiracy Theory of Personal Jurisdiction.*

The Aroluxe Defendants are subject to this Court's jurisdiction by virtue of AO1's allegations regarding co-Defendants TNA and Broadhead in connection with AO1's business conspiracy claim. *See generally* Compl. Count IV. "Under a conspiracy theory of personal jurisdiction, 'a conspirator not present in the forum state will, nevertheless, be adjudged to have

had a personal presence in the forum State by means of adequate minimum contacts of the other conspirators[.]'" *St. Paul Fire*, 2011 U.S. Dist. LEXIS 53321, at *8-9, 2011 WL 1897683, at *3 (W.D. Va. May 18, 2011) (citation omitted) (denying defendants' motion to dismiss for lack of personal jurisdiction since plaintiff had adequately shown a prima facie case of civil conspiracy among defendants). Put another way

> when individuals conspire to do something that they could reasonably expect to have consequences in a particular forum, if one co-conspirator who is subject to personal jurisdiction in the forum commits overt acts in furtherance of the conspiracy, those acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction even if they have no other contacts with the forum.

*Cline v. Hanby*, Civ. A. No. 2:05-0885, 2006 U.S. Dist. LEXIS 90469, at *21–22, 2006 WL 3692647, at *7 (S.D. W. Va. Dec. 13, 2006). When relying on the conspiracy theory of personal jurisdiction, the plaintiff must "make a threshold showing . . . that a conspiracy existed and that the defendants participated therein." *McLaughlin v. McPhail*, 707 F.2d 800, 807 (4th Cir. 1983); *see also Cline,* 2006 U.S. Dist. LEXIS 90469, at *23, 2006 WL 3692647, at *7 (requiring more than bare allegations of conspiracy). But, because "'each count must have independent jurisdictional moorings,'" this theory of personal jurisdiction applies only to AO1's Count IV, Violation of Va. Code. § 18.2-499. *See Wigand v. Costech Techs., Inc.*, Civ. A. No. 3:07CV440-HEH, 2008 U.S. Dist. LEXIS 743, at *18, 2008 WL 65517, at *6 (E.D. Va. Jan. 4, 2008) (quoting *iDefense Inc. v. Dick Tracy Group, PLC*, 58 Va. Cir. 138, 140 (Va. Cir. Ct. 2002) (Hudson, J.)).

Here, AO1 has made the requisite threshold showing pursuant to Va. Code §§ 18.2-499, 500 that a conspiracy existed in which all Defendants, including Aroluxe and Harris, participated. Under Virginia law, "to recover in an action under these statutes, a plaintiff must establish: '(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business[;] and (2) resulting damage to plaintiff.'" *Dunlap v. Cottman Transmission Sys.,*

-11-

*LLC*, 287 Va. 207, 214, 754 S.E.2d 313, 317 (2014) (citations omitted). Courts have made it clear that "[i]t is not necessary for a plaintiff to prove that the defendant conspirators acted with actual malice, i.e., ill-will, hatred, or spite directed toward the plaintiff. . . . Rather, a plaintiff must establish by clear and convincing evidence only that the conspirators acted with legal malice, i.e., 'intentionally, purposely, and without lawful justification.'" 287 Va. at 215, 754 S.E.2d at 317 (citation omitted). Based on the allegations in the Complaint, AO1 has adequately plead both elements under Va. Code § 18.2-499: (1) a combination of two or more persons for the purpose of willfully and maliciously injuring AO1 in its business, *see* Compl. ¶¶ 22, 29, 45-47, 80-85; and (2) resulting damage to AO1. *See id.*, ¶ 86.

As to the Court's exercise of personal jurisdiction over TNA and Broadhead, AO1 alleges, and TNA and Broadhead admit, that AO1 and TNA entered into discussions about a possible long-term, multi-event, production services agreement. *See* Compl. ¶ 8; *see also* ECF Nos. 10, 12. More importantly to the jurisdictional analysis, AO1 also alleges, and TNA and Broadhead admit, that *TNA approached AO1* about providing production services at the BFG Event. Compl. ¶ 14; *see also* ECF Nos. 10, 12. TNA and Broadhead have also admitted that TNA did not pay AO1 in full for the services rendered in connection with the BFG Event. Compl. ¶ 22; *see also* ECF Nos. 10, 12. TNA and Broadhead further admit that TNA entered into a financing arrangement with Aroluxe, which AO1 alleges provided the economic motivation for the Aroluxe Defendants' involvement in the conspiracy. Compl. ¶ 36; *see also* ECF Nos. 10, 12. And, TNA and Broadhead admit that TNA owed money under the Repayment Agreement and that Broadhead interacted directly with TNA on a number of occasions regarding those obligations. Compl. ¶ 38; *see also* ECF Nos. 10, 12. In fact, AO1 alleges that Broadhead himself proposed the terms of the Repayment Agreement. Compl. ¶ 31; *but see* ECF Nos. 10, 12 (admitting only that TNA "entered

into a repayment agreement with Plaintiff"). TNA and Broadhead have also admitted that, sometime after TNA entered into a financing arrangement with Aroluxe, Broadhead and other representatives from TNA began ignoring AO1's efforts to collect. Compl. ¶¶ 36, 41-44; *see also* ECF Nos. 10, 12; Roberts Decl. ¶ 9 (attaching Delaware UCC Financing Statement, which proves relative timing of Aroluxe infusion of capital on or around March 14, 2016).

Furthermore, the Harris Brothers were wearing two alternative hats during the relevant period of the Complaint, using "@tnawrestling.com" email accounts and generally holding themselves out as employees of TNA while also serving in an additional capacity as principals or agents of Aroluxe while using "@aroluxe.com" email addresses. *See* Compl. ¶ 80; *see also* Roberts Decl. ¶¶ 2, 3, 10-15. As alleged in the Complaint, the Aroluxe Defendants were seeking to protect their investment in TNA at the expense of AO1 by reaching an agreement to continue dodging AO1's collection efforts with TNA and Broadhead while simultaneously intending to willfully and maliciously harm AO1's business so that AO1 would stop competing with the Aroluxe Defendants for TNA's production work. Compl. ¶¶ 82-84. Through these actions directed at AO1 in Virginia, Defendants intentionally, purposefully, and without lawful justification agreed amongst themselves to delay AO1's good faith collection efforts in the first instance and then to fraudulently induce AO1 to enter the Repayment Agreement. Compl. ¶ 85. Thus, as in *St. Paul Fire*, AO1 "has carried its burden of making more than a bare assertion of civil conspiracy purposefully directed to Virginia, especially given the difficulties of showing a hidden conspiracy before discovery." *St. Paul Fire*, 2011 U.S. Dist. LEXIS 53321, at *10, 2011 WL 1897683, at *3.

These allegations, and the attendant admissions by TNA and Broadhead, are sufficient for the Court to exercise personal jurisdiction over TNA and Broadhead. And, because the Court has

personal jurisdiction over TNA and Broadhead, it may also exercise personal jurisdiction over their alleged co-conspirators, the Aroluxe Defendants, on this independently sufficient basis.

> B. *The Aroluxe Defendants Purposefully Availed Themselves Of The Privilege Of Conducting Activities In Virginia.*

The first prong of the traditional inquiry is the purposeful-availment test. *See Tire Eng'g*, 682 F.3d at 302. "[A] court does not determine purposeful availment simply based upon which party has more factors in its favor or the quantity of defendant's contacts. Instead, the test is 'flexible' and 'proceeds on a case-by-case basis,' considering the 'qualitative nature of each of the defendant's connections to the forum state.'" *Liberty Mut.*, 92 F. Supp. 3d at 441 (quoting *Tire Eng'g*, 682 F.3d at 301–02 and citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (holding that courts "should not 'merely . . . count the contacts and quantitatively compare [one] case to other preceding cases.'" (citation omitted))).

The Aroluxe Defendants have sufficient minimum contacts to meet the purposeful availment test. First, the Aroluxe Defendants subjected themselves to personal jurisdiction in Virginia by knowingly causing a tort in Virginia. Aroluxe, through its agent Harris, intentionally directed its tortious conduct toward the forum state, Virginia, knowing that conduct would cause harm to a forum resident, AO1. Explaining this standard, this Court has interpreted the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984) as follows:

> *Knowingly* causing a tortious injury in one state from another has been held sufficient contact to establish personal jurisdiction. Applying this rule, the Fourth Circuit has emphasized that merely causing tortious injury in the forum state is not enough—the Defendant must *know* that the injury occurred in the state where personal jurisdiction is asserted. In other words, a defendant must "expressly aim[] or direct[] its conduct toward the forum state."

*Balsly v. W. Mich. Debt Collections, Inc.*, No. 3:11CV642-DJN, 2012 WL 628490, at *5 (E.D. Va. Feb. 27, 2012) (citations omitted) (holding defendant subjected itself to personal jurisdiction in

Virginia on the basis that it knew of plaintiff's status as a Virginia resident when it completed the act of causing him injury).

Here, as alleged in the Complaint, as of at least December 2015, Aroluxe, through two of its agents, the Harris Brothers, was aware of AO1's good faith efforts to collect the money owed to it by TNA for the BFG Event. Compl. ¶ 70. As of at least March 14, 2016, Aroluxe, through two of its agents, the Harris Brothers, was aware of the Repayment Agreement. Compl. ¶ 72. Through subsequent actions, Aroluxe, through two of its agents, the Harris Brothers, intentionally took steps to further prevent TNA making additional payments to AO1 under the terms of the Repayment Agreement, which resulted in financial damage to AO1. Compl. ¶¶ 73-77. AO1, a Virginia Limited Liability Company, felt the brunt of this damage in Virginia, and Aroluxe, through two of its agents, the Harris Brothers, knew its actions were directed at AO1 in Virginia.

Thus, contrary to the Aroluxe Defendants' arguments in the Motion, this case is not like *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273 (4th Cir. 2009). In *Consulting Engineers*, the Court found that personal jurisdiction did not exist over defendant, because defendant had never visited Virginia, had not executed a formal agreement, the contemplated agreement would have been performed outside of Virginia, and the alleged injury occurred outside of Virginia. Here, as explained above, "the focal point of the alleged tortuous activity was Virginia." *Cf. Consulting Engineers*, 561 F.3d at 280 (finding that plaintiff failed to demonstrate that the focal point of the alleged tortious activity was Virginia). Unlike in *Consulting Engineers*, the Aroluxe Defendants' contacts with the forum state were not sufficiently attenuated. For example, Harris, while using an "@tnawrestling.com" email address and signature block and generally holding himself out as an employee of TNA, assured AO1 in the months leading up to the Repayment Agreement that TNA would pay AO1 for production services already rendered

with no intention of ever repaying TNA in full. *See* Compl. ¶¶ 22-24, 59. Unlike the exchanges in *Consulting Engineers*, these communications were significant. Several AO1 employees exchanged numerous emails with Harris directly – and even more emails on which Harris was copied – in the months leading up to the Repayment Agreement in which Harris lead AO1 to believe that it would be paid for its services and could expect additional work from TNA. *See* Roberts Decl. ¶¶ 14-15.

These communications between AO1 and Harris, as intended, tricked AO1 into being exceedingly patient in the first instance and then induced AO1 to enter into the Repayment Agreement. *See* Compl. ¶¶ 61-66. The Repayment Agreement provided that TNA would make payments to AO1 in Virginia and contained a Virginia governing law provision. Thus, the Aroluxe Defendants, by soliciting, tortiously interfering with, and then conspiring to breach a contract performed, in significant part, in Virginia, subjected themselves to the reach of this Court. Accordingly, the purposeful availment test has been satisfied.

    C. *AO1's Claims Arise From the Aroluxe Defendants' Virginia-Related Activities.*

The second prong "is generally not complicated." *Tire Eng'g*, 682 F.3d at 303. The Fourth Circuit has explained: "Where activity in the forum state is 'the genesis of [the] dispute,' this prong is easily satisfied. A plaintiff's claims similarly arise out of activities directed at the forum state if substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim." *Id.* (*quoting CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295–96 (4th Cir. 2009)).

Here, the Aroluxe Defendants' actions directed at Virginia form the genesis of AO1's claims. Aroluxe, through two of its agents, the Harris Brothers, intentionally took steps to prevent TNA making additional payments to AO1 under the terms of the Repayment Agreement, which

resulted in financial damage to AO1 and TNA's breach of the Repayment Agreement. Through these actions directed at AO1 in Virginia, Defendants intentionally, purposefully, and without lawful justification agreed amongst themselves to delay AO1's good faith collection efforts in the first instance and then to fraudulently induce AO1 to enter the Repayment Agreement. These allegations are the basis of AO1's (i) fraudulent inducement claim against Harris, (ii) tortious interference with contractual relations claim against Aroluxe, and (iii) claim for violation of Va. Code § 18.2-499 against Aroluxe and Harris. Accordingly, AO1's claims directly arise out of and relate to the Aroluxe Defendants' contacts with Virginia, and the Court should find that the second prong of the analysis is met.

> D. *Exercising Personal Jurisdiction Over the Aroluxe Defendants Is Constitutionally Reasonable.*

The third prong of the analysis requires that the exercise of jurisdiction must be constitutionally reasonable such that "litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent. The burden on the defendant, interests of the forum state, and the plaintiff's interest in obtaining relief guide [the] inquiry." *Liberty Mut.*, 92 F. Supp. 3d at 444 (citations and internal quotation marks omitted). Moreover, "'the inequity of being haled into a foreign forum is mitigated if it was reasonably foreseeable that the defendant could be subject to suit there.'" *English Boiler*, 2012 U.S. Dist. LEXIS 81505, at *23-24, 2012 WL 2131895, at *7 (quoting *CFA Inst.*, 551 F.3d at 296 and citing *Shaffer v. Heitner,* 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment) (explaining that defendant's contacts with foreign sovereign created "predictable risks")).

Here, the Aroluxe Defendants will admittedly face a greater burden litigating in Virginia than AO1 will. But, this factor "is not dispositive." *Tire Eng'g*, 682 F.3d at 304. Notably, the Aroluxe Defendants have been able to secure counsel admitted in this Court and should have

foreseen the possibility of being forced to litigate in Virginia. *See Tire Eng'g*, 682 F.3d at 304-05 (citing *CFA Institute*, 551 F.3d at 296). Additionally, the interest of AO1, as a Virginia limited liability company with its principal place of business of Virginia, in a convenient forum outweighs that of the Aroluxe Defendants' interest. Further, AO1 seeks redress pursuant to Virginia statutes for alleged tortious injuries sustained by it in Virginia, thus invoking the laws of Virginia. Accordingly, Virginia has a substantial interest in adjudicating this matter. *See id.* at 306. Since litigating this case in Virginia does not place the Aroluxe Defendants at a severe disadvantage compared to AO1, the Court should find that it is constitutionally reasonable to exercise jurisdiction over the Aroluxe Defendants.

## CONCLUSION

WHEREFORE, Plaintiff Audience of One Productions, LLC respectfully requests that this Court deny the Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendants Ronald Dean Harris and Aroluxe, LLC, d/b/a Aroluxe Marketing, and grant any such further relief it deems just and proper.

| | |
|---|---|
| Dated: December 14, 2016 | Respectfully submitted, |
| | AUDIENCE OF ONE PRODUCTIONS, LLC |
| | By Counsel |

/s/ Stanley A. Roberts
Brian C. Riopelle (VSB No. 36454)
Stanley A. Roberts (VSB No. 85111)
Alexandria E. Cuff (VSB No. 83785)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
Telephone: (804) 775-1000
Facsimile: (804) 775-1061
briopelle@mcguirewoods.com
sroberts@mcguirewoods.com
acuff@mcguirewoods.com

*Counsel for Plaintiff Audience of One Productions, LLC*

## **CERTIFICATE OF SERVICE**

I certify that on this 14th day of December, 2016, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

/s/ Stanley A. Roberts
Stanley A. Roberts (VSB No. 85111)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
Telephone: (804) 775-1000
Facsimile: (804) 775-1061
sroberts@mcguirewoods.com

*Counsel for Plaintiff Audience of One Productions, LLC*